UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRACY BOWEN,                                     Case No. _____

       Plaintiff,

vs.

CENTURION OF FLORIDA, LLC and
MHM HEALTH PROFESSIONALS,
LLC,

       Defendants.
_____/

## COMPLAINT

Plaintiff Tracy Bowen sues Defendants Centurion of Florida, LLC and MHM Health Professionals, LLC, and alleges:

### Nature of the Action

1. This is an action to remedy unlawful discrimination, a racially hostile work environment, and retaliation under 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Florida Statutes § 760.01, *et seq*.

### Parties

2. At all material times, Plaintiff Tracy Bowen has been a resident of Escambia County, Florida. Plaintiff is a member of a protected class because of her race (African-American) and because she reported and/or opposed unlawful employment practices.

3. Defendant Centurion of Florida, LLC ("Centurion") is a Florida limited liability company organized and existing under the laws of the State of Florida. At all material times, Centurion has been an "employer" as that term is used under the applicable laws.

4. Defendant MHM Health Professionals, LLC ("MHMHP") is a foreign limited liability company authorized and doing business in the State of Florida. At all material times, MHMHP has been an "employer" as that term is used under the applicable laws.

## Jurisdiction and Venue

5. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States.

6. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Conditions Precedent

8. All conditions precedent to bringing this action have been performed or have occurred.

## Factual Allegations

9. Centurion and MHMHP jointly employed Plaintiff.

10. Plaintiff began her employment with Defendants in April 2018 as an Activities Therapist at the Santa Rosa Correctional Institution ("SRCI") in Milton, Florida. In July 2018, she became a Mental Health Counselor after she was licensed as a mental health counselor intern.

11. In October 2018, some of Plaintiff's co-workers and supervisors attended a meeting in the Warden's office at the SRCI to address an incident in which a Corrections Officer at the facility had fashioned and displayed a noose to an African-American co-worker.

12. Plaintiff's co-workers reported during the meeting that they considered the Officer's actions to be racist, that the actions created a racially hostile work environment, and that the Officer's continued presence at the facility sent a message that racist acts of intimidation were accepted and condoned at the SRCI.

13. In April 2019, one of Plaintiff's African-American co-workers was suspended the day after she reported an incident in which she saw an African-American inmate who appeared to have beaten by Corrections Officers. Two weeks later, the co-worker was fired. This caused the Mental

3

Health Professionals at the facility to fear that they would be retaliated against for reporting misconduct including actual or potential unlawful acts.

14. On several occasions in the following weeks, Plaintiff and her fellow Mental Health Professionals met with their supervisors and voiced their concerns about the racially hostile work environment and their fear of being retaliated against for writing mandated incident reports. Plaintiff and her co-workers suggested several possible actions that could be taken to ameliorate the situation. Defendants responded, however, that little (if anything) could be done because the Corrections Officers involved were employed by the Florida Department of Corrections and not Defendants.

15. On April 22, 2019, Plaintiff and the other Mental Health Professionals attended a meeting with their supervisors and the Warden. During this meeting, rather than having their concerns addressed, Plaintiff and her co-workers were yelled at, told not to "stir the pot," and ordered to "cease and desist" discussing the noose incident in the workplace.

16. On or about July 4, 2019, one of Plaintiff's African-American co-workers was told that a Corrections Officer at the SRCI had been overheard talking about locking her in a room with inmates and letting the inmates "beat the shit out of" her. After viewing the facility's videotapes and confirming that the allegations were true, the co-worker met with her

department supervisor, reported that she was concerned for her safety and that of her co-workers, and requested to meet with the Warden to discuss her concerns.

17. At the request of some of the Mental Health Professionals, another meeting was held with their supervisors on July 11, 2019.

18. At the meeting, Plaintiff and her fellow Mental Health Professionals complained that the Corrections Officers who had engaged in racist and threatening behavior were still working at the facility, and that Defendants had failed to provide a safe, non-hostile work environment. When Defendants again indicated that little (if anything) could be done, it was agreed that Plaintiff and her co-workers would take a "mental health day."

19. When they attempted to return to work on July 12, 2019, Plaintiff and the other Mental Health Professionals who had attended the meeting on July 11 were told that their hostile work environment complaints were being investigated and that they would not be permitted to return until the investigation was complete. They were later advised that they had been suspended without pay for "abandoning" their patients.

department supervisor, reported that she was concerned for her safety and that of her co-workers, and requested to meet with the Warden to discuss her concerns.

17. At the request of some of the Mental Health Professionals, another meeting was held with their supervisors on July 11, 2019.

18. At the meeting, Plaintiff and her fellow Mental Health Professionals complained that the Corrections Officers who had engaged in racist and threatening behavior were still working at the facility, and that Defendants had failed to provide a safe, non-hostile work environment. When Defendants again indicated that little (if anything) could be done, it was agreed that Plaintiff and her co-workers would take a "mental health day."

19. When they attempted to return to work on July 12, 2019, Plaintiff and the other Mental Health Professionals who had attended the meeting on July 11 were told that their hostile work environment complaints were being investigated and that they would not be permitted to return until the investigation was complete. They were later advised that they had been suspended without pay for "abandoning" their patients.

20. Defendants later advised Plaintiff that she could transfer to another correctional facility that was about two hours away from her home, but they refused to put the offer in writing.

21. By email dated August 6, 2019, Plaintiff advised Defendants that she was resigning due to their failure to provide her with a safe work environment free from retaliation and hostility.

## COUNT 1
### RACE DISCRIMINATION

22. Plaintiff realleges paragraphs 1 through 21 above.

23. Plaintiff has been discriminated against because of her race in that she was treated differently than similarly situated non-African-American employees based, at least in part, on her race.

24. Defendants are liable for the differential treatment towards Plaintiff because they controlled the actions and inactions of the persons making decisions affecting Plaintiff or they knew or should have known about those actions or inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses of Plaintiff.

25. Defendants also knowingly condoned and ratified the differential treatment of Plaintiff because they allowed and/or participated in the differential treatment.

26. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's employment with Defendants and constitutes adverse employment action.

27. Defendants' acts and omissions constitute intentional discrimination and unlawful employment practices based on race, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e, *et seq.*, and Florida Statutes § 760.01, *et seq*.

28. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

29. Plaintiff is entitled to recover her attorney's fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and Florida Statutes § 760.11(5).

## COUNT 2
### HOSTILE WORK ENVIRONMENT

30. Plaintiff realleges paragraphs 1 through 21 above.

31. Plaintiff was subjected to unwelcome harassment based, at least in part, on her race and/or because she had complained about or opposed race discrimination.

32. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

33. Defendants are liable for the harassment because they controlled the actions and inactions of the persons making decisions affecting Plaintiff or they knew or should have known about those actions or inactions and failed to take prompt and adequate remedial action.

34. Defendants also knowingly condoned and ratified the hostile work environment because they participated in and/or allowed it to occur.

35. Defendants' knowing allowance and ratification of the actions and inactions created, perpetuated, and facilitated an abusive and offensive work environment under the law.

36. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

37. Plaintiff is entitled to recover her attorney's fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and Florida Statutes § 760.11(5).

## COUNT 3
### RETALIATION

38. Plaintiff realleges paragraphs 1 through 21 above.

39. Plaintiff reported and/or opposed unlawful employment practices during her employment with Defendants.

40. Defendants retaliated against Plaintiff for reporting and/or opposing the unlawful employment practices.

41. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

42. Plaintiff is entitled to recover her attorney's fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and Florida Statutes § 760.11(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants awarding compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees, and costs; granting equitable relief mandating Defendants' obedience to the laws enumerated above and permanently enjoining Defendants from future

violations of those laws; and granting such other and further relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all matters so triable.

DATED:  September 15, 2020

                                          **TEIN MALONE PLLC**

                                          */s/ Gaye L. Huxoll*
                                          Gaye L. Huxoll
                                          Florida Bar No. 149497
                                          ghuxoll@teinmalone.com
                                          (305) 442-1101

                                          *Counsel for Plaintiff*